Throughout the course of casing the documents on issue, Draft 23, Draft 0575, JMS Metal Fabrication, Inc., defendant appellant, Mr. Cross Appellee, v. Atlas Aerials & Equipment, LLC, defendant appellee and cross appellant. Arguing for the appellant, cross appellee, Mr. James M. Curtis. Arguing for the appellant, cross appellant, Mr. Brian J. Lush. All right, good morning, counsel, and thanks for being with us. Mr. Ertis, you may begin. Thank you. My name is Jim Ertis. I am appealing the denial of a 214-01 petition to vacate a judgment. I'd like to start with a brief recitation of the salient facts and the reasons why I believe that the court was in error. Mr. Ertis, may I ask you a question before you get started? Absolutely. Did the court ever give, provide a date for the plaintiff to present his post-a motion to vacate? Did the court ever give a date? Oh, a hearing date for him to present that motion. I'm trying to recall. I think it was briefed, and I think it was set for a ruling but not a hearing. No hearing on it. Yeah. Okay. So it was stricken. Your position is stricken without notice. My petition? Your position. Your position is that it was stricken without notice to your client. Is that correct? Correct. So I now represent the client in the underlying matter. What my position is is that in the underlying matter, there was no notice to my client at all, if that's what you're referring to. I am. That's exactly right. I'm sorry. I was thinking of my petition to vacate. No. My 214-01. No. That's the reason why we're, that's one of the six defenses that I articulate in my appellate brief. Okay. I'm sorry to interrupt. Go ahead, Mr. No. The upshot is this. This is a small claim. Atlas is a construction equipment rental company. JMS is a metal fabricator. JMS rented a forklift from Atlas, and a dispute arose between them relative to the forklift. The forklift was returned, and JMS, the appellant, thought that they overpaid for the forklift and filed suit. Atlas thought that they underpaid and filed a counterclaim. The upshot is that the JMS claim amounted to $1,500, and the Atlas claim amounted to $3,500, with an additional allegation that there was some damage to the forklift amounting to $16,000. Regardless of how you characterize it, it's undeniable, and the court admitted, that this is a small claim. Did someone take over the payment at some point for the forklift or for whatever equipment was at issue? We, according to the pleadings, yes, a party paid for the entirety of the contract. Because it was needed on the property? Yes. And so that's another defense to this claim. So getting to the basis for why we believe that there was error was that the court's holding, as it relates to notice, was error. Without any written motion, without any written notice provided to JMS, the court entered numerous orders which were drastic. That is, JMS was without any notice or motion barred from presenting any evidence, which is related to the subject of Atlas' written discovery. JMS claims versus Atlas were all dismissed summarily, in their entirety, without any written motion, without any written notice. Well, does JMS acknowledge that an attorney withdrew, maybe the only attorney who appeared in this case until very late in it, in 2022? Does he acknowledge receiving that particular notice? Yes, and he attempted to retain substitute counsel. Okay, and when did that happen? That happened on June 22 of... That's the withdrawal. Yeah. But did he ever file an appearance on his own behalf, or did he ever get an attorney to file an appearance? He retained substitute counsel who appeared in court. Well, counsel, hold on a second. That seems to me to be the crux of this. Someone stepped up on the transcript and asked Lee to file an appearance and then began his or her recitation that day, but never filed an appearance. That's exactly right. So how does your client portray himself as having had counsel? Okay, well, he had counsel up until that day. He had counsel up until June 22 of 2022. That's the date of the withdrawal. And on that same date, his substitute counsel sought Lee to file a substitute appearance. But didn't. But did not. But did not. But that does not... Well, arguably, yes. However, it doesn't obviate the fact that he's entitled to notice. And no notice was ever... God bless you. And no notice was ever given. God bless you. Thank you. No notice was ever given to him. So whether a party... I mean, at some point, you can't notice Trump's everything. So, I mean, whether he's represented or not, he's entitled to notice. If he doesn't have counsel, he's entitled to notice of a motion to dismiss. So that is it right there in a nutshell. That's where this case went wrong. On July 21 of 2022, Atlas orally moved to dismiss JMS claims and bar JMS from presenting any evidence in support of their claims with no notice whatsoever. They argued orally that Atlas had propounded written discovery to JMS on April 12 of 2022 and that JMS was granted to July 8 of 2022 to respond. What's the significance of that? They were two weeks late on answering written discovery. Two weeks. And so with no 201K conference at all, with no notice, they enter court on the next court appearance after the attorney withdrew and entered disorder. And quite frankly, I don't even know if the judge understood or appreciated what he was ordering because obviously he vacated part of it in an afterthought on my motion. So you filed 214-01 or someone filed a 214-01? I did, yes. Okay. Then what was the viable defense to that damages claim? And did you ever set those out in your motion to vacate? I did. And there were basically six defenses to the claim, to the underlying claim. First and foremost, what we've already discussed. The notice. The notice. The other one is that there was no written agreement between Atlas and JMS. No written agreement at all. It was as if you asked me to provide you with a forklift and I provided you with a forklift. That was it, to do a job. We disagreed on how much I owe you and I returned the forklift. That was the agreement. So it was lack of a written agreement, number one. Number two, lack of notice. And there was no specific language in any contract for an award of attorney's fees by any means, although the judge had already vacated that, so we're not disputing that part of his ruling. The claim is, as you indicated, was paid by Mr. Harry Jordan. The contract that Atlas had with PubStop was paid in full by Harry Jordan, and Atlas entered into a new oil agreement between JMS and Atlas, the terms of which are disputed. So an additional defense is that the contract was satisfied that Atlas was suing on. And, by the way, PubStop, the individual, the company that Atlas had the agreement with, originally filed bankruptcy, so it's arguable that they didn't even have the ability to enforce any kind of a written contract, if that's what they're alleging, and I think they are. The other glaring defense to this is that JMS was never obligated to answer Atlas's counterclaim because Atlas never amended its counterclaim, pursuant to a court order ordering Atlas to amend its counterclaim. They filed, they did a second amended counterclaim, but never a third, right? They were ordered to do a first amended counterclaim, to my recollection, and they never did. They never filed it. And if you want, I can describe the timeline. I outlined the timeline. They were given permission to file a third, but they were not ordered to file a third. Exactly. Well, okay. Maybe it would have been a good idea, but the fact remains they were given permission and it didn't happen. Correct? Well, okay, when you say they were given permission. Given what? Given leave to file it. Right. Yes, yes. It's not the same as being told or having your complaint dismissed. Well, actually, no. I mean, it was an order. It was an order ordering them to file an amended counterclaim. The judge isn't going to handle their case and tell them how to handle their case. He gave them leave to file and they chose not to. And why is not really relevant at this point. Well, I think it was based on a motion to reconsider. It still doesn't matter. If they chose not to, they chose not to. I mean, the judge did not say you shall file. That order did not say you are ordered to file a third amended. It didn't. They were just given leave, which is way different. Well, I think it did, though. I think that order did state that. The order stated that they were ordered to file an amended counterclaim on or before a particular date. So I don't know how the court interprets that. I interpret that as, okay, I have to amend this counterclaim, this count and this counterclaim. Well, I know some judges do like to be proactive and handle cases to get them resolved, but it's not normal. Yeah. Well, there's a lot of anomalies in this case, to be perfectly honest. The way I look at this case is this. I think that the judge was attempting to effectuate an equitable result. But in doing so, he took away our right to a trial and a hearing. We dispute that we owe him $3,500. We dispute that we caused any damage to the forklift. The judge was correct on the fee-shifting part of this, which was obscene. So I thought we talked about your 214-01 petition. The defendants think that there was not due diligence. The court found there was no due diligence. What took so long, nine months, to file this 214? Well, he was a Belarusian immigrant and did not appreciate the significance of this. And that's all I can say. I mean, the way I— Mike, that is the critical issue. You have to show that there was diligence in bringing the petition. And if you choose to represent yourself, I hold you to the same standard. Agreed. So where is the diligence? Completely agree. And my only response to that is that the legislature has allowed a two-year window to file a petition to vacate, and he is on the shorter side of that, albeit nine months. And I can tell you the only other excuse that I have for this very nice gentleman is that he's a Belarusian immigrant who's struggling in this metal fabrication business to retain counsel and figure things out. In fact, as you can see, he attempted to do it by himself, you know, shortly. Well, he couldn't represent the corporation. The corporation doesn't have an attorney. I know. It's completely inept, but he attempted to. He's struggling. And so those two points, I think—I think it's fair to say that he was reasonably diligent in bringing this in the time that he did. In addition, though, I do think that— So wait. You have a failure to appear, and then nine months later he files the 214-01. Yes. Right? Yes. That's true. More important, though, than the due diligence requirement is the requirement that substantial justice be achieved, and I think that is the spirit of the 214-01 petition. I'm quoting from one of the cases that I cited. One of the guiding principles of 214-01 relief is that the petition invokes the equitable powers of the circuit court, which should prevent enforcement of a default judgment when it would be unfair, unjust, or unconscionable. So— I don't know that it's in this particular record. Did your client ever go to the courthouse and actually look at the file outside of the courtroom? Did he ever go to, like, the clerk's office and say, can I see my file? No, I did. I did that. Okay, but to the best, do you know that he did not? He's— Okay. He can barely speak—he speaks English, but not well. Okay. He is ill-equipped to do anything like that. So— You can finish your thought there. So I pray that our—we do get an opportunity to present our case in court. We think that, you know, we do think that there was numerous errors in this case, and I appreciate your time and consideration. Thank you. Thank you. All right, Mr. Bosch. When you're ready, you may proceed. May it please the Court, good morning. My name is Brian Bosch. Seated with me at counsel table is my partner, Mr. de Blasio. We represent the Appellee Cross-Appellant. I'll refer to them as ATLAS. The appellant is JMS, if that's fine with your honors. One of the things I'd like— Stay near that microphone because you're moving away from it. Sure. One of the things I'd like to start by pointing out is that we have two corporations here. We keep talking about he, they. We have two corporations, okay? The appellant, JMS, hired counsel originally. They had counsel that was involved in the litigation for an extensive period of time. Motion practice, a motion to dismiss or counterclaim partially granted, okay? A lot of things happened before that June 2022 date or July. Oh, absolutely, your honor. I mean, they were in court on March 17th, and let's deal with that second amended complaint issue right up front, okay? Because buried in some ad hominem attacks in the reply brief is the suggestion that the second amended complaint was not filed. It was filed. It's in the record. And I'll direct the court's attention to in the record at C-671, Volume 1, is the file stamp copy of Atlas' second amended counterclaims and third party claims. It's a lot more than that, but there it is. It was file stamped 3-17-22 at 3-10 in the afternoon. Was there a motion to file, asking you to file a third? No. Never? No. What was filed was an amended complaint the day before. There were a few errors in the document that we wished to correct, and we did by filing the second amended complaint. There was no request ever for a third amended complaint. This pleading was live as of March 17th. They were required under the rules to answer it within 28 days. They've never answered the complaint, which gets to the question of what's the contract here, okay? And what you have is a situation where we have a couple of court appearances still with counsel and a live counterclaim. You have the March 17th appearance where the brief is given. You have an April 22nd or 26th appearance where counsel appeared for JMS and had not answered, okay? They then filed in June. We're talking now 90 days out. The answer is well past due under the Supreme Court rules. They file a motion for leave to withdraw. No answer, okay? You then have a counsel appearing at the next hearing saying he's going to file an appearance. Never does, okay? That's not our fault. That's JMS's obligation. They need to have counsel. They knew they needed to have counsel. They had original counsel. They had substitute counsel. This is not a situation where, for instance, in the Berg case where they cite that there's surprise. In that case, I mean, it was a very different set of circumstances. Well, did you give notice of the judgment, the motion that entered judgment? Was notice given to the plaintiff in this case? Yes. It was, in fact. What had happened was in August, the judge entered a default but did not enter a judgment. He set it for prove-up on October 4th, 2022. Right. In September, sorry, the date. In September, we filed all of our prove-up materials. Among those prove-up materials is a certificate of service, again, in the record. That certificate of service indicates that not only was the prior counsel who had been of record served, but while we understand that there's a gentleman who's kind of the president and operator of the company, his wife is the secretary. She shows up as the registered agent. She has a website address both with the secretary and on their website. She was served with the materials by email. Rule 11 allows for service by email by anyone who has been before the court. Okay? Rule 11 doesn't require us to do anything more than to give that service. So we gave it to their former counsel, who we had hoped would pass it along, not under any obligation of understanding.  I'm just curious why you did serve him before her because there's no reason at this point. There was no obligation. The hope was that by doing two different things, we would somehow, someway make certain they got notice. But the key here is that the gentleman's wife, who is the secretary of the company, was served with all of the materials by email. And one of the things that's been always running through this is we talk about the gentleman, the Belarusian immigrant. Well, that's all well and good, but it's a corporation. And whether or not his wife gave him notice of it is not really a question because notice was given. But I'm going to suggest to the court that he did know. He absolutely knew because on October 4th, the Pruebok hearing occurred. The matter was passed and then first laid run. He was given plenty of opportunity. I'm sorry, that was, I think, a prior. But the opportunity to appear was clear. He had all the Pruebok materials. He had notice of the Pruebok materials. The oral decision of the judge was made before 10 o'clock in the morning. At 10, 13 in the morning, a motion to vacate is filed by a Belarusian immigrant. Was that prior to the entry of the judgment? Yes. That was my next point. The judgment or the order didn't get entered until 2, 13 in the afternoon. There was no way for this gentleman to know that there had been anything entered in the court other than having someone in the courtroom monitoring the proceedings. There was no reason to file that motion to vacate at 10, 13 in the morning. There was nothing in the record before 2, 17 p.m. that afternoon. That's assuming the King County clerk is that quick. There's going to be a lag time between the entry and it actually getting into the public record. You make a good point. One other issue that they raised is this judgment was satisfied because Harry Jordan paid it. There are three elements to our claim for damages. There are the contract damages, which we dispute. We say we were still owed the $3,000. There's damage to the Fort Worth, which is approximately $16,000. I can give your honors the exact number if you wish. And then there's our claim for the attorney's fees. The claim for the attorney's fees arises from the original contract that the gentleman, representing another company, entered into with our client. True, that company did file for bankruptcy. But our client, as alleged in the second amended counterclaim and prior pleadings, did not wish to continue to lease to the gentleman, whether it is a former company or the current company. However, he got the landlord to agree that he would back him up. And the allegations are very clear that they were going to lease the equipment on the same terms as a written agreement. There's no suggestion that there isn't that agreement. There's just simply, well, we didn't sign something. You don't have to sign something to have an agreement with an attorney's fees provision. Quite to the contrary, they adopted it. There are multiple allegations in the counterclaim that go to that. I can just walk you around and give you quickly the paragraphs. I have paragraph 5, 15, and then basically 44 through 48 of our second amended counterclaim. You can find it in the record at C-565 and 566 in volume 1. So are you saying the damages, the contract damages, weren't satisfied by the Jordans? No. That's our allegation, yes. So there are three elements to it. There's the contract claim, there's the damage to the property, and there are the attorney's fees. Right. And even if there was a payment, we still got our attorney's fees for trying to collect with respect to damage to the property, which revises out of, you know, due diligence. I'm talking about the damages from the contract.  That's what I'm talking about. I'm not looking to the damages of the forklift or the fees. The contract damages you submit were not paid by the Jordans in full. That's correct. That's our allegation. So the amount that you are asking for for contract damages, does that subtract what the Jordans pay? Yes. Yes. And was it the same forklift on the property that is called damaged? Yes. There was a forklift that continued from when the original contract was entered in with the company that went bankrupt, and then there was all this question about what's going to happen, you owe us this money. At that point in time, Mr. Jordan paid, brought everything current. And then at that point in time, our client was still reluctant to allow the equipment to remain on the property and complete the job. And only when Mr. Jordan said, well, look, you know, I'm here, and the individual who is the president of both companies said, I'll do it on the same terms. I'll create the same terms that I had with you before. Those two things created an oral contract. The adoption of the prior written contract and the assurances that they would be moving forward. So basically, we have an oral agreement that adopts the prior agreement. It was easily performed within the time frame. There's no allegation or claim that it wasn't. No defense by their prior counsel to that extent was raised. And they had good prior counsel who was involved for a considerable amount of time. So what you have is a situation where the judge said, you need to answer. You're 90 days late. You don't answer. He enters graduated findings and orders of punishment, if you will, in Rule 219. First, he says, I'm going to not allow you to defend. Okay? Again, I'm sorry. First, he said, I'm going to strike your complaint. Then he says, I'm not going to allow you to defend. Then he's out of frustration. Clearly, he's like, well, if you're not even going to show up, I'm going to enter a default. Right? There's no answer on the file. So all the allegations in the counterclaim are deemed admitted as a matter of law. That's what Roth clearly states. The rule is unequivocal. If they are not answered, they're deemed admitted. The allegations are very clear. There was an adoption of the contract. The contract included an attorney's fee provision. That's where things stood in August of 2022. Okay? The next step was the notice and then hearing that occurred for the prove-up. And you said that you had delivered your prove-up materials in this order-setting time. Approximately, just a ballpark, how many pages of material was that? It was greater than the honor. I don't have the references to the record. But it was quite voluminous because it was all of our timesheets. You know, this was not a situation where we submitted sort of a one-page, this is what it is. All of our timesheets are included. All of the invoices are included. Information with respect to the damages. It was voluminous. But on the other hand, I think that would catch someone's attention. This is not a two-page sort of no-brainer. Did you have a notification on your computer when you sent the notice that would tell you that it was received or that it was read or anything to that effect? There was no read received or unreceived. Let me step back. I know there was no read received received. I'm not certain if it was specifically included. Our firm does not, as a matter of course, include it in their communications. And I'm not certain in this case if it was. But they knew because someone was there. See, that's my question. There is a notification you can put on your computer that says, you know, advise if it's received or advise if it's open. But that can be overwritten. I personally override it every single time. Computer opens it up and asks to send a receipt indicating that I've read or received it, and I deny it every single time as a matter of course. I find it intrusive, personally. I understand what Your Honor is saying, that it would probably have been the right thing to do in this instance where you're sending it to them. But there's been no indication in the record whatsoever that they didn't get it. But what's the indication that they did? The indication is the certificate of service with the correct e-mail address directed to the person who's the secretary of the corporation. Right? And we're not even obligated under Rule 11 to do that. In the Ehren case, they didn't provide notice of their motion for default judgment. Ehren raised that issue in their 214 petition, and the court specifically said it may have not been the best professional practice, but there's no obligation when there's no attorney on record for a corporation for the corporation to get notice. Just isn't. And the Ehren is very clear about that. That issue was raised and addressed. We fulfill the professional obligation, I suggest, to roll twice over. One, reaching out to the prior counsel. And secondly, by actually giving electronic notice as provided by Rule 11 to the defendant. It's the best we can do. There's nothing else that we can do. It's a corporation. We serve their secretary, as shown in the secretary of state's office, and on their website. And I believe that's included in the brief's information with respect to that, our brief in the 214-01 motion, showing not just the secretary of state's information, but what their website indicated as well. And it matches the email on the notice. And so the bottom line is it never bounced back. We did not get it returned to us as undeliverable. There's no indication to that. I'm sorry, if that was what Your Honor was asking, I misunderstood. But, no, there's no indication that it wasn't received by prior counsel, nor was there any indication that it wasn't received by JMS. It did not bounce back in either case. Thank you. Did you have any idea of the name of the person who appeared, who showed up in court on behalf of JMS, but did not file an appearance? No, we had no idea. And, in fact, quite frankly, I wasn't a former associate at ours who was handling a lot of this. Okay. It was not until I kind of got involved late in the briefing in all of this where I looked at it and I said, the timing doesn't make any sense here. You know, there was this notion that, yeah, it got filed right away, it got filed the same day. When I personally got involved in this matter very late, I looked at the timing of it and realized it was within, and this is probably knowing Judge Bush's call, giving it more time than it really deserves. Within 45 minutes of the court hearing, his court calls tend to be quite short, and it was filed at 1013. But, as I said, the order isn't entered until the afternoon. Our counsel came back to the office in Oak Brook Terrace, drafted the order, and submitted it. So someone had to be there. Someone had to know. There's just no other explanation for it. Did the court enter judgment at the time? The court granted the amount of our prove-up at that point in time. But, as Your Honor knows, until there's a written order, there's no judgment. The entry of the oral decision is not the final order. You've got to have it in writing that occurred in the afternoon. Well, there are orders that are entered if there is not an anticipation that there will be a written order. In this case, there was clearly an anticipation of a written order. Absolutely. Absolutely. Absolutely. And then, with respect quickly to our cross-appeal, where Judge Bush, after oral argument, left the bench, took a few minutes, came back out. Quite frankly, I wasn't there. I see this as, frankly, this was an attempt to force a settlement. He took out the biggest piece of our damages, left the other two in place, and thought, maybe that's going to resolve the case. The problem is heirloom doesn't allow you to piecemeal a 1401 motion. You either grant it or you don't. You can't just say, well, there's some parts of 1401 that you did me, and so I'm going to do something here. He denied the motion with respect to that portion of the judgment where there was a breach of the contract for payment, and he affirmed the judgment with respect to damages. If he's doing that, if he's making findings that didn't meet all three problems of the heirloom test, how can he possibly make a decision that met all three with respect to the attorneys' fees? You either did it or you didn't. And I'm betting the ranch on this. You either met all the allegations on heirloom, and then the judgment should have been reversed or vacated, excuse me, or you didn't. The one thing he couldn't do that was consistent with heirloom was exactly what he did, which was to take out part of the judgment and vacate that and allow the rest of it to stay. It just doesn't work. Well, I was going to say I'm going to ask the same question. I don't want to steal your thunder. But did he, you know, it has to be reasonable attorneys' fees. Did he make a determination when he took it out that, in fact, they were not reasonable? I mean, you can't just say I'm entitled to $100,000. You have to prove that those are reasonable and necessary to the action. And maybe he changed his mind on that issue. There is no finding to that effect whatsoever. Didn't he mention equitability, though? He mentioned there was this question about equity, right? And equity doesn't trump the heirloom rule, contrary to what's been argued by JMS. Heirloom says specifically this is not clearly an equitable remedy where we're trying to do justice. There are three elements here that play into an equitable decision. You've got to meet all three of those elements, and we will do equity then. But you first have to do some things, which is, A, defend. They didn't defend. B, be diligent. They weren't diligent. They only showed up in court because they got hit with third-party citations and individual citations to discover assets. Counsel appeared the first time on the return date of the citations. They would have sat quietly and just ignored us until it happened another six weeks, six months, or six years later. Whoops. That's all right. I think there's – are there any napkins by you? They're out of this. That's a first. We haven't had any of those before. That's all right. I think I got it. Sorry. I tend to gesticulate. I apologize. But the whole point here is that, again, what they did was sit quietly. They filed a motion. It got struck. They did nothing else. They never showed up again. They never filed anything in court until they needed to appear and were forced to appear by the citations. That's it. So the question of diligence here the judge found was lacking, and I think it's very, very clear that it was lacking. Any other questions? I have no further.   Thank you, Your Honor. We'll have another opportunity on the cross-appeal. A-B, A-B. All right. Mr. Erdos? Thank you. Yeah, you can – the marshal's going to come over and just make sure that we're all clear. I think he got it. Thank you. So – No, Mr. Erdos, you have to pull the microphone away. It depends on where you're going to stand. So what you won't see in this record is a written contract by and between these two parties. There never was one. There's no written agreement by and between JMS. I mean, it's been explained now – I mean, it was explained in the case, but for purposes of this argument, that there was one with the previous contractor for lack of a previous person who was doing this that went bankrupt, and there was some acknowledgment with counsel for JMS and Atlas, counsel, that they would adopt and go forward on the same terms and conditions. So there is a contract outstanding. That's disputed. That's completely disputed. If you see the affidavit of Serge Podras, he says that never happened. That never happened. Who said it never happened? The principal of JMS, my client. All right, but at the time it happened, if I understand counsel correctly, he was represented by an attorney. His attorney's acceptance of those terms and conditions is his acceptance of those terms and conditions. No, no, that never happened. That's what I'm saying. His attorney never accepted those. Do we have an affidavit as to that in this record? Well, an affidavit from the attorney.  No, because there isn't any evidence that he accepted those terms. They're putting it in writing. I get that. But if they're saying it happened and you're saying it didn't happen, you could have gotten an affidavit or something from that counsel to establish the issue. And that would have been in your 214-01, I think. It is, it is. No, it's your allegation, but there's no affidavit you just said. Okay, so in terms of when it comes to these fee-splitting agreements, which the court indicated on the record, he said that in order for any kind of a fee-sharing agreement to be valid, there has to be a writing, a written agreement stating that I agree to share my fees, to incur reasonable fees if I lose this case. And what I'm saying is that that doesn't exist between these two parties. You're talking about the fees? Yes. And not to mention the fact that, I mean, you're all practicing, we're all practicing lawyers. Have you ever seen a small claim result in a $70,000 legal fee? Yes. Well, I noticed, counsel, that the case number is a CH. Okay, but the bottom line is that this is a $3,500. That's how it started. That's how it started. And, I mean, it ended shortly thereafter. I mean, this is not even one year of litigation. I mean, I've seen it in this courtroom where it's been a small amount of a judgment and a $700,000 attorney's fee. Have you ever seen a situation where there's absolutely no notice of a motion to bar JMS from presenting any evidence to support its claims and or defenses? All right, now that might be a point of contention, but he's, counsel, said that these items were sent. It was voluminous. But he's not true. Nothing was sent. If you look at the record, there was absolutely no notice. Judge, here's what I'm, on the day, on the next court appearance after JMS' lawyer ritual, with no notice whatsoever, they barred JMS from presenting any evidence to support its claims and dismissed all of their claims. The notice that he was given on withdrawal clearly said that your failure to file an appearance or have an appearance on file could result in the dismissal of all of your actions or a default. I didn't, I did not say that. I haven't seen one that doesn't. Okay, well, in this record, I'm asking you very respectfully, it doesn't exist. It doesn't exist. Who was given leave to withdraw in one sentence, one sentence, one line. There's nothing else that says anything else. I cannot believe that Judge Bush would enter that withdrawal without that language on the notice. It has to be on that notice. That's exactly why I'm here. I'm telling you that there are multiple errors made in this matter. I have deep respect for Judge Bush. He's a wonderful judge. But there are a lot of errors that got by. Okay, that's exactly what I'm trying to say. As far as Harry Jordan paying it, yes, Harry Jordan paid the contract. It's paid. It's paid. They're suing out a contract that a bankrupt party, that a bankrupt party discharged. And then, on top of that, some third party paid it. So. But did the third party pay the entirety? His defendants in the counterclaim, they submit that the contract wasn't paid in its entirety by the Jordans. Well, he paid more than the contract because he paid some $12,000. I'm sure he didn't pay attorney's fees. But all I can say is the whole purpose of that disclosure is that it represents a defense to the claim, which is one of the elements I'm obligated to show the court. So, I mean, there's multiple defenses to this. No, this is just one of them. The fact that there's no written agreement, the fact that some third party paid all a part of this, I mean, those represent defenses to the claim. I think that the courts, I think that, I mean, if I was playing devil's advocate, I think that the biggest problem that we have is demonstrating due diligence in bringing the petition. Well, there is no, so far there is no bright line that says one month is not too long, two months is not too long. You get nine months that passed between the basic default in this matter and in your petition, 214.01 petition. And that's a pretty long time. All the time I assume that your client is still operating this business, it's still registered with the Secretary of State. It's not like it has gone bankrupt, did it? No, no, ma'am, it did not. So, you know, why, everybody can go into the courthouse and ask for your, I'd like to see my file. And they will do whatever they can to help you see the file. And you're saying that never happened in this case. Your client never went in and went to see the file. I mean, the fact that your client is technically a corporation doesn't mean the President can't go in and look at his file. It just means he can't file an appearance on his behalf. I think his efforts were aimed at trying to find an attorney to help him based on the budget that he had. In addition, the legislature did provide for a two-year window to file a 214.01 petition, and he is on the lighter side of that. So, I mean, if our legislature allowed, allows for this 214.01 petition to be brought within two years after a judgment is entered, and he does it well within that, well within that, then I would argue that he is being, he's more diligent than not. Well, are you asking for a new rule of law that if it's filed within two years, it is inherently, as a matter of law, diligent? No, but I would, I would. Well, how do you reconcile the two? If two years is the outside because that's what the legislature said, then anything from zero to two years, you're saying the legislature has determined that's diligence. What I'm saying, well, the legislature has determined that that's implicitly diligent. That allows you to file a 214.01 petition. Yeah, but what I am saying also is that he was, he was reasonably diligent. He acquired, he found a lawyer to file a petition. I mean, you can't, these petitions, they are not prepared overnight. The nine months was the date that it was filed. So, obviously, he met with me 30, 60 days before then to understand what had happened. Plus, you know, let's not forget that it's him that brought this action. He's the one that brought this action. Right, and you would think he would be diligent in pursuing it. Well, I think to the best of his ability, you know, he did the best that he could. I've seen a lot worse. I've seen a lot worse. You know what I mean? I mean, it is somebody that's trying to make things right. And, by the way, as far as the notice that they're referring to, they willy-nilly found an email address on a website, and the notice that was provided was not within the time that it was supposed to. It was not on the same day or a day before the actual motion was presented. Why would that be willy-nilly? That's what we have this great technology for, to determine if somebody has a website, to contact them. And almost every single website says contact. Okay, but I don't think that that's legal notice. I don't believe that's legal notice. There wasn't anybody to notify because nobody filed an appearance. Okay. However, there was no mailing. There's no delivery. We don't do mailing as much anymore. Our office does. I'm sorry. No, go ahead. Rule 11 doesn't prohibit what counsel did. No. Send it via email. This is a corporation. There's no attorney. My next best thing is to send it to the registered agent at the email address given. I believe that was the former registered agent, and it happened to be the wife of my client that they're alleging they did. But then there's something weird about the notice that they did make. It was modified. It was an error, and they corrected it, if you look in the record. So, I mean, that's just one defense. That's just one of several defenses to this. The upside is that there's a lot of issues with this ruling, and I've attempted to raise them with you, one being notice. There's many others. I think that my client is entitled to his day in court because he never got that. Is there anything else that you want to say on this cross-appeal issue? No, ma'am. All right. Thank you. Thank you. And Mr. Bosch. With respect to the notice of the October 4th hearing, direct the court's attention to page 994-C-1001, which is the defendant counter plaintiff atlas aerial equipment LLC's exhibits in support of entry of default judgment. That's just basically our little document. All the exhibits, which are several hundred pages, follow. At page C-1001 is the certificate of service. The certificate of service indicates e-mails being sent to the plaintiffs, former counsel, to the third-party defendant, the Jordans who are out, abundance of caution, and via e-mail, Tara Powell, Tara at JMSMFG.com. That's from the website. That is the corporation's entity. She's been very much involved in all of this. In the record are e-mails from her to our client making accusations about us attempting to defraud them, telling the landlord not to pay, that we are a bad business who engages in bad business practices and files mechanical liens just simply that are fraudulent, and to collect. That was the basis of our defamation claim. Those were her e-mails. She's very much involved in this. And as the court contended to note, A, Rule 11 says that notice shall be by e-mail. If we don't send it by e-mail and we send it by mail, we're not following Rule 11 anymore. I'm old enough to remember when that certainly wasn't the case, but it is today. And so that portion of it is, A, they weren't entitled to it. That's what heirloom says. B, they got something. C, they were in court. D, they got something on file within an hour of the hearing having started. So to suggest that there was nothing that was received, nothing in terms of notice given, just simply isn't what the record reflects. It reflects exactly the contrary. I don't know what more we were to do at all. And when you talk about the page numbers, you're talking about the actual written, the defendant counter plaintiff, but then it's got lots of exhibits. Exhibits run from C-1002 through C-1164. Those are our exhibits. That's what was sent. That was all sent.  And some pictures. Pictures are in there. Invoices are in there. Our invoices are in there. Our court counsel's invoices are in there. An affidavit as to the reasonableness of fees, they're all in there. And yes, the way our office does it, we put the certificate of service after the document, but before the exhibits. But it's all the same document. And that's where it's to be found. So I don't think there's anything there that indicates that there wasn't notice, which gets to the attorney's piece. Right?  Okay? Again, as I gave you in the record, are the clear allegations that the contract was accepted. And moving forward was the basics. That contract has an attorney's fees provision. That is important for people or clients like this. They have small matters. They don't have $110,000 equipment rentals. They have $10,000, $11,000, $12,000 equipment rentals. It is so easy in today's world to have a set of attorney's fees, even in a case that doesn't get messed up like this, to have attorney's fees that far exceed the value of what you're trying to recover. Aren't attorney's fees within the discretion of the trial court? No. Not when they're in the contract. The amount needs to be reasonable. But when they're in the contract, it's a contract provision. The contract needs to be enforced. But the judge could decide, and I've seen it happen, that, yes, attorney's fees are provided for. And while you ask for, let's just say you ask for $10,000, you might only get $2 that the judge thinks is reasonable. Understood. The judge always has a right to award only reasonable attorney's fees. Rather than somehow monitoring the appearance on the 4th and filing their motion, someone had stepped up with the notice that they had received and said, Judge, whoa, $69,000 is just way too much here. Then they would have something that maybe they could stand on. One of the elements of a room is defending. And it's not defending after the judgment is entered. It's defending prior to the judgment being entered. They didn't do that. They fell down on the job for about seven months, nine months here. And that's why the air room elements are on that. Thank you, Your Honor. Thank you. All right. Thank you, counsel, for your argument this morning. We will take the matter under advisement. We'll take a short recess and prepare for our next hearing. Thank you. All rise.